Theresa Donahue Egler, Esq.
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone: (973) 656-1600
Facsimile: (973) 656-1611
*Attorneys for Defendant*s

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-----------------------------------------------------------
MICHAEL PRICE II,

                    Plaintiff,

v.

LIFE TIME FITNESS, INC., BRYAN SMITH,
PAUL RUSSO, MARK POLOMBO, and ERIC
MOORE, jointly and severally,

                    Defendants.
-----------------------------------------------------------

: Hon. _____
: Civ. Action No.: _____
:
:
:
: **NOTICE OF REMOVAL & LOCAL**
: **CIVIL RULE 11.2 CERTIFICATION**
:
:
:
:

**TO:   CHIEF JUDGE AND JUDGES OF**
**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**ON NOTICE TO:**

      Alexander O. Bentsen, Esq.
      BentsenLaw
      135 Merrymount Street
      Staten Island, New York 10314
      *Attorneys for Plaintiff*

      Michelle M. Smith, Esq., Clerk
      The Superior Court of New Jersey
      Richard Hughes Justice Complex
      6th Floor North Wing
      Trenton, New Jersey 08625

      Clerk, Superior Court of New Jersey
      Law Division – Essex County
      50 West Market Street
      Newark, New Jersey 07102

**HONORABLE JUDGES:**

Defendants Life Time Fitness, Inc. ("LTF"), Bryan Smith, Paul Russo, Marc Polombo (incorrectly pled "Mark Polombo"), and Eric Moore (collectively, "Defendants") by and through their counsel, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby notice the removal of this action, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, to the United States District Court for the District of New Jersey, and as grounds therefore show as follows:

**I.    TIMELINESS OF REMOVAL**

1.    On or about August 10, 2016, Plaintiff Michael Price ("Plaintiff") commenced a civil action against Defendants in the Superior Court of New Jersey, Essex County, entitled *Michael Price II v. Life Time Fitness, Inc. and Bryan Smith, Paul Russo, Mark Polombo and Eric Moore jointly and severally*, Docket No.: ESX-L-005564-16.

2.    Plaintiff effected service of the Summons and Complaint on LTF on August 18, 2016 by personally delivering a copy of the Summons and Complaint to LTF's registered agent. Plaintiff served the remaining Defendants by delivering a copy of the Summons and Complaint to Defendants' counsel via e-mail on August 31, 2016.  On September 9, 2016, Plaintiff served Defendants' counsel with a copy of Plaintiff's First Amended Complaint. A copy of the Summonses, Complaint, First Amended Complaint, Civil Case Information Statement, and Track Assignment Notice, are attached hereto as Exhibit A.  These are the only process, pleadings, or orders known by Defendants to have been served in this action.

3.    Pursuant to 28 U.S.C. § 1446(b), a Notice of Removal must be filed within 30 days after the receipt by defendant, through service or otherwise, of the Complaint.

4.     Accordingly, pursuant to 28 U.S.C. § 1446(b), this Notice of Removal has been timely filed within 30 days after receipt by any defendant, through service or otherwise, of the Complaint.

## II.     VENUE

5.     The New Jersey Superior Court, Essex County, is located within the District of New Jersey.  28 U.S.C. § 110.  Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## III.     BASIS FOR REMOVAL – FEDERAL QUESTION

6.     This action is properly removable under 28 U.S.C. § 1441(b), because the United States District Court has original jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

7.     Plaintiff's First Amended Complaint alleges that Defendants violated Title VII, 42 U.S.C. § 2000 et seq. ("Title VII"), and the Family and Medical Leave Act, 28 U.S.C. § 2601 et seq. ("FMLA"), and asserts related claims under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD"), and the common law.  By asserting claims under federal law, namely Title VII and the FMLA, Plaintiff's First Amended Complaint asserts a federal question under 28 U.S.C. § 1331.

8.     Accordingly, this case is properly removable under 28 U.S.C. § 1441(a).

## IV.     SUPPLEMENTAL JURISDICTION

9.     This Court has supplemental jurisdiction over Plaintiff's state law NJLAD and common law claims. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all other claims that are so related to Plaintiff's federal causes of action "that they form part of

the same case or controversy under Article III of the United States Constitution." State law claims fall within this Court's supplemental jurisdiction when they share with the federal claims "a common nucleus of operative fact … such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

10.     Here, Plaintiff's NJLAD and common law claims arise out of a common nucleus of operative facts pertinent to his Title VII and FMLA claims. Indeed, both the state and federal claims arise out of Plaintiff's employment with LTF; the alleged discrimination and retaliation against Plaintiff by Defendants because of his relationship with Rani Houlis; the denial of a promotion while at LTF; and Plaintiff's termination. Therefore, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Moreover, there is no reason why this Court should not exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff's state law claims neither raise novel or complex issues of State law nor predominate over the claims over which this Court has original jurisdiction, and there are no exceptional circumstances or other compelling reasons for this Court to decline supplemental jurisdiction. See 28 U.S.C. § 1367(c). Thus, removal is proper under 28 U.S.C. § 1441(c).

## V.     **CONCLUSION**

11.     Defendants have not previously sought similar relief.

12.     To date, Defendants have not filed a responsive pleading in Plaintiff's State court action, and no other proceedings have transpired in that action.

13.     Pursuant to 28 U.S.C. § 1446, copies of this Notice of Removal have this day been served by overnight mail upon Plaintiff's counsel, and first class mail upon the Clerk of the Superior Court of New Jersey, and the Clerk of the Superior Court in Essex County, New Jersey.

14.     By removing this matter, Defendants do not waive or intend to waive any defense, including but not limited to insufficiency of process and insufficiency of service of process.

**WHEREFORE**, Defendants respectfully request that this Honorable Court take jurisdiction of this action and issue all necessary orders and process to remove said action from the Superior Court of New Jersey, County of Essex County, to the United States District Court for the District of New Jersey.

Respectfully Submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
*Attorneys for Defendants*

By:     s/ Theresa Donahue Egler
        Theresa Donahue Egler, Esq.
        10 Madison Avenue, Suite 400
        Morristown, New Jersey 07960
        Telephone: (973) 656-1600
        Facsimile: (973) 656-1611
        theresa.egler@ogletreedeakins.com

Date:   September 16, 2016.

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 11.2</u>

I, Theresa Donahue Egler, Esq., counsel for Defendants, certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Respectfully Submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
*Attorneys for Defendants*

By:   <u>s/ Theresa Donahue Egler</u>
Theresa Donahue Egler, Esq.
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone: (973) 656-1600
Facsimile: (973) 656-1611
theresa.egler@ogletreedeakins.com

Date:   September 16, 2016.

# EXHIBIT A

Alexander O. Bentsen, Esq.
135 Merrymount Street
Staten Island, New York 10314
T. 917-400-4686
F. 888-443-4096
    Attorney for Plaintiff Michael Price

------------------------------------------

| | |
|---|---|
| **MICHAEL PRICE, II,** | SUPERIOR COURT OF THE STATE OF NEW JERSEY: LAW DIVISION ESSEX COUNTY |
| Plaintiff, | |
| v. | DOCKET NO.: **ESX-L-5564-16** |
| **LIFE TIME FITNESS, INC** AND **BRYAN SMITH, PAUL RUSSO** AND **MARK POLOMBO,** AND **ERIC MOORE** JOINTLY AND SEVERALLY | CIVIL ACTION |
| | **SUMMONS** |
| Defendants. | |

------------------------------------------

From the State of New Jersey
To the Defendants Named Above

    The plaintiff named above has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for the lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A filing fee* payable to the Clerk of the Superior Court and completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these office is provided. If you do not have an attorney and are not eligible free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: August 16, 2016

/S/ Clerk
Clerk of the Superior Court

DEFENDANT:  **LIFE TIME FITNESS, INC.**
                     **C/O National Registered Agents, Inc. of NJ**
                     **100 Canal Pointe Boulevard – Suite 212**
                     **Princeton, New Jersey 08540**

\* $175.00 for Law Division Cases

## Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

LEGAL SERVICES OF NEW JERSEY STATEWIDE HOTLINE: 1-888-LSNJ-LAW (1-888-576-5529)

GLOUCESTER COUNTY:
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

HUDSON COUNTY:
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

HUNTERDON COUNTY:
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

MERCER COUNTY:
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

MIDDLESEX COUNTY:
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

MONMOUTH COUNTY:
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

MORRIS COUNTY:
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

OCEAN COUNTY:
Deputy Clerk of the Superior Court
118 Washington Street, Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

Directory of Superior Court Deputy Clerk's Offices / County Lawyer Referral and Legal Services
Revised 08/21/2013, CN: 10153

Page 2 of 3

PASSAIC COUNTY:
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505

LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

SALEM COUNTY:
Deputy Clerk of the Superior Court
Attn:  Civil Case Management Office
92 Market Street
Salem, NJ 08079

LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 691-0494

SOMERSET COUNTY:
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, N.J. 08876

LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

SUSSEX COUNTY:
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

UNION COUNTY:
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073

LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

WARREN COUNTY:
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500

LAWYER REFERRAL
(908) 859-4300
LEGAL SERVICES
(908) 475-2010

Alexander O. Bentsen, Esq.
135 Merrymount Street
Staten Island, New York 10314
T. 917-400-4686
F. 888-443-4096
    Attorney for Plaintiff Michael Price

------------------------------------------------------------------

**MICHAEL PRICE, II,**

                 Plaintiff,

                 v.

**LIFE TIME FITNESS, INC** AND **BRYAN SMITH,
PAUL RUSSO** AND **MARK POLOMBO,** AND
**ERIC MOORE** JOINTLY AND SEVERALLY

                 Defendants.

------------------------------------------------------------------

SUPERIOR COURT OF THE STATE OF
NEW JERSEY: LAW DIVISION
ESSEX COUNTY

**DOCKET NO.: ESX-L-5564-16**

CIVIL ACTION

**SUMMONS**

From the State of New Jersey
To the Defendants Named Above

    The plaintiff named above has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for the lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A filing fee* payable to the Clerk of the Superior Court and completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these office is provided. If you do not have an attorney and are not eligible free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: August 16, 2016

                                                              /s/ Clerk
                                                              Clerk of the Superior Court

TO DEFENDANT:          **ERIC MOORE
                       10 Lafayette Avenue
                       Apt 568
                       Morristown, New Jersey 07960**

* $175.00 for Law Division Cases

## Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl.,  Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records,  Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

LEGAL SERVICES OF NEW JERSEY STATEWIDE HOTLINE: 1-888-LSNJ-LAW (1-888-576-5529)

GLOUCESTER COUNTY:
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

HUDSON COUNTY:
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

HUNTERDON COUNTY:
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

MERCER COUNTY:
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

MIDDLESEX COUNTY:
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

MONMOUTH COUNTY:
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

MORRIS COUNTY:
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

OCEAN COUNTY:
Deputy Clerk of the Superior Court
118 Washington Street,  Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

Alexander O. Bentsen, Esq.
135 Merrymount Street
Staten Island, New York 10314
T. 917-400-4686
F. 888-443-4096
    Attorney for Plaintiff Michael Price

---------------------------------------------------------------

| | |
|---|---|
| **MICHAEL PRICE, II,** | SUPERIOR COURT OF THE STATE OF NEW JERSEY: LAW DIVISION ESSEX COUNTY |
| Plaintiff, | |
| v. | DOCKET NO.: ESX-L-5564-16 |
| **LIFE TIME FITNESS, INC** AND **BRYAN SMITH,** **PAUL RUSSO** AND **MARK POLOMBO,** AND **ERIC MOORE** JOINTLY AND SEVERALLY | CIVIL ACTION **SUMMONS** |
| Defendants. | |

---------------------------------------------------------------

From the State of New Jersey
To the Defendants Named Above

    The plaintiff named above has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for the lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A filing fee* payable to the Clerk of the Superior Court and completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these office is provided. If you do not have an attorney and are not eligible free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: August 16, 2016

                                               /s/ Clerk
                                        Clerk of the Superior Court

TO DEFENDANT:      **MARK POLOMBO**
                      **4 Dunn Road**
                      **West Orange, New Jersey 07052-2813**

* $175.00 for Law Division Cases

## Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

LEGAL SERVICES OF NEW JERSEY STATEWIDE HOTLINE: 1-888-LSNJ-LAW (1-888-576-5529)

GLOUCESTER COUNTY:
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

HUDSON COUNTY:
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

HUNTERDON COUNTY:
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

MERCER COUNTY:
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

MIDDLESEX COUNTY:
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

MONMOUTH COUNTY:
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

MORRIS COUNTY:
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

OCEAN COUNTY:
Deputy Clerk of the Superior Court
118 Washington Street,  Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

Alexander O. Bentsen, Esq.
135 Merrymount Street
Staten Island, New York 10314
T. 917-400-4686
F. 888-443-4096
    Attorney for Plaintiff Michael Price

--------------------------------------------------------------------

**MICHAEL PRICE, II,**

                    Plaintiff,

            v.

**LIFE TIME FITNESS, INC** AND **BRYAN SMITH,**
**PAUL RUSSO** AND **MARK POLOMBO,** AND
**ERIC MOORE** JOINTLY AND SEVERALLY

            Defendants.

--------------------------------------------------------------------

SUPERIOR COURT OF THE STATE OF
NEW JERSEY: LAW DIVISION
ESSEX COUNTY

**DOCKET NO.: ESX-L-5564-16**

CIVIL ACTION

**SUMMONS**

From the State of New Jersey
To the Defendants Named Above

    The plaintiff named above has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for the lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A filing fee* payable to the Clerk of the Superior Court and completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these office is provided. If you do not have an attorney and are not eligible free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: August 16, 2016

                                                    /s/ Clerk
                                                    ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                                                    Clerk of the Superior Court

TO DEFENDANT:     **PAUL RUSSO**
                  **100 Edgefield Drive**
                  **Morris Plains, New Jersey 07950-1964**

* $175.00 for Law Division Cases

## Directory of Superior Court Deputy Clerk´s Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl.,  Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records,  Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

LEGAL SERVICES OF NEW JERSEY STATEWIDE HOTLINE: 1-888-LSNJ-LAW (1-888-576-5529)

GLOUCESTER COUNTY:
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

HUDSON COUNTY:
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

HUNTERDON COUNTY:
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

MERCER COUNTY:
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

MIDDLESEX COUNTY:
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

MONMOUTH COUNTY:
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

MORRIS COUNTY:
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

OCEAN COUNTY:
Deputy Clerk of the Superior Court
118 Washington Street,  Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

Alexander O. Bentsen, Esq.
135 Merrymount Street
Staten Island, New York 10314
T. 917-400-4686
F. 888-443-4096
　　Attorney for Plaintiff Michael Price

------------------------------------------------------------------

**MICHAEL PRICE, II,**

　　　　　　　　Plaintiff,

　　　　　v.

**LIFE TIME FITNESS, INC** AND **BRYAN SMITH,**
**PAUL RUSSO** AND **MARK POLOMBO,** AND
**ERIC MOORE** JOINTLY AND SEVERALLY

　　　　　Defendants.

------------------------------------------------------------------

SUPERIOR COURT OF THE STATE OF
NEW JERSEY: LAW DIVISION
ESSEX COUNTY

**DOCKET NO.: ESX-L-5564-16**

CIVIL ACTION

**SUMMONS**

From the State of New Jersey
To the Defendants Named Above

　　　The plaintiff named above has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for the lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A filing fee* payable to the Clerk of the Superior Court and completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

　　　If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

　　　If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these office is provided. If you do not have an attorney and are not eligible free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: August 16, 2016

　　　　　　　　　　　　　　　　　　　/s/ Clerk
　　　　　　　　　　　　　　　　Clerk of the Superior Court

TO DEFENDANT:　　　**BRYAN SMITH**
　　　　　　　　　**16 Bella Vista Street**
　　　　　　　　　**Locust Valley, New York 11560-1706**

* $175.00 for Law Division Cases

# Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

LEGAL SERVICES OF NEW JERSEY STATEWIDE HOTLINE: 1-888-LSNJ-LAW (1-888-576-5529)

GLOUCESTER COUNTY:
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

HUDSON COUNTY:
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

HUNTERDON COUNTY:
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

MERCER COUNTY:
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

MIDDLESEX COUNTY:
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

MONMOUTH COUNTY:
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

MORRIS COUNTY:
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

OCEAN COUNTY:
Deputy Clerk of the Superior Court
118 Washington Street,  Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

Alexander O. Bentsen, Esq.
135 Merrymnount Street
Staten Island, New York 10314
T. 917-400-4686
F. 888-443-4096
    Attorney for Plaintiff Michael Price

---

MICHAEL PRICE, II,

                    Plaintiff,

                    v.

LIFE TIME FITNESS, INC AND BRYAN SMITH,
PAUL RUSSO, MARK POLUMBO AND ERIC MOORE
JOINTLY AND SEVERALLY

                    Defendants.

---

SUPERIOR COURT OF THE STATE OF
NEW JERSEY: LAW DIVISION
ESSEX COUNTY

DOCKET NO.: ESX-L 5564-16

                    Civil Action

COMPLAINT AND
DEMAND FOR JURY TRIAL

---

Plaintiff, Michael Price, II, residing at 91 Clarken Drive, West Orange, New Jersey 07052, says

by way of this Complaint against Defendants Life Time Fitness, Inc. and Bryan Smith, Paul Russo,

Mark Polumbo and Eric Moore, alleges as follows:

## FACTS COMMON TO ALL COUNTS

1.      Michael Price, II, is a former employee of Life Time Fitness, Inc. Mr. Price was

employed by Life Time Fitness, Inc. and worked in the Berkley Heights and Florham Park, New

Jersey locations from November of 2011 until he was wrongfully terminated on May 14, 2015.

2.      Life Time Fitness, Inc. ("Life Time") operates fitness, recreation and spa centers

throughout the country. Life Time was a publicly traded company, however, in June of 2015, it

was taken private after it was acquired by private equity firms TPG Capital and Leonard Green

Partners, L.P. Life Time operates approximately 119 fitness centers nationally.

3.     Mr. Price was employed by Life Time as a Member Engagement Advisor. In this position, Mr. Price was a salesperson, selling new gym memberships while also maintaining relationships with existing fitness center clients

4.     Mr. Price's domestic partner, Rani Houlis, also worked for Life Time, in the Berkeley Heights and Montvale, New Jersey locations and the Syosset, New York Location, as a Spa Manager from 2012 until she was wrongfully terminated on May 17, 2014. Mr. Price was terminated on May 14, 2015, only three days prior to the one year anniversary of Ms. Houlis' termination.

5.     Ms. Houlis had sued Life Time pursuant to the Conscientious Employee Protection Act ("CEPA") and the New Jersey Law Against Discrimination ("NJLAD"). Docket No.:ESX-L-005159-14 (removed to Federal Court Docket No.: 14-cv-5425-KM-MCA). The lawsuit included Ms. Houlis' complaints about sexual harassment in the workplace.

6.     When Ms. Houlis worked in the Syosset location, she had reported impropriety, which resulted in the termination of a Life Time employee. However, after Ms. Houlis had left the Syosset location, the employee was rehired. Thereafter, Ms. Houlis was terminated by Area Director Bryan Smith. Upon information and belief another Life Time employee, Kim Berry, was also terminated for the firing of this employee. Upon information and belief, this was because the employee was a friend of Smith.

7.     Prior to when Ms. Houlis was terminated by Bryan Smith, Paul Russo was Senior General Manager of the Berkley Heights, New Jersey location where Ms. Houlis and Mr. Price worked as well as the Florham Park, New Jersey location where Mr. Price worked.

8.     Upon information and belief, Russo maintained romantic relationships with several Life Time employees, including Melissa DeRogatis. Russo was Ms. DeRogatis' direct supervisor

and their relationship was a violation of the company policy which "prohibits sexual or romantic relationships between team members who occupy positions with a direct reporting relationship" and also prohibits "a romantic relationship with a team member who is employed in the same club."

9.     Ms. Houlis confronted Russo because his behavior was interfering with Ms. DeRogatis' work. When she confronted him, Ms. Houlis called Russo's behavior sexual harassment. She had confronted Russo several times regarding this harassment and asked him to leave Ms. DeRogatis alone.

10.     Russo later falsely accused Ms. Houlis of speaking negatively about the Life Time Berkeley Heights location and also indicated to Smith that he did not want her working there. Russo sent several emails to Smith stating that he wanted Rani "out" of the Berkeley Heights facility on September 16, 2013.

11.     These emails also falsely accused Ms. Houlis of sending vulgar text messages to National Operations Manager Ali Yanez and warned Smith that Ms. Houlis and Ms. Yanez had a relationship (as friends) outside of the workplace.

12.     Ms. DeRogatis ultimately stopped working for Life Time because Russo had asked her to lie about his relationship with her if Life Time human resources asked her about it.

13.     These types of workplace romantic relationships were common at and tolerated by Life Time.

14.     Because Ms. Houlis was terminated as a result of her attempts to address these issues, she brought an employment based lawsuit against Life Time.

15.     It was well known among the Life Time employees and managers that Mr. Price and Ms. Houlis were in a relationship.

16.     It was also well known that Mr. Price and Ms. Houlis were expecting a child together and that the baby was due in March 2015.

17.     Because of Mr. Price's relationship with Ms. Houlis, he was denied a position he was interviewing for in the Mount Laurel, New Jersey Life Time location.

18.     Mr. Price was interviewing for this position with Bryan Smith and Regional Sales Manager, Eric Moore.

19.     Out of fear and concern for similar reprisals, Mr. Price contacted Mark Savage in human resources requesting that he not be interviewed by Smith because of the events leading up to Ms. Houlis' termination.  Smith remained involved in the interview process and Mr. Price did not get the job.

20.     Thereafter, approximately 6 or 7 months after Ms. Houlis was terminated and around the time that she filed her lawsuit against Life Time, Mr. Price was placed on a "Performance Improvement Plan."

21.     The "Performance Improvement Plan" was purportedly due to poor sales performance, however, the majority of sales team that Mr. Price worked with was performing similarly. Yet, Mr. Price was the only member of the sales team singled out for this treatment.

22.     The "Performance Improvement Plan" was supposed to involve weekly meetings with Paul Russo and another Life Time manager Mark Polumbo.

23.     During the "Performance Improvement Plan" period which ran from January 2015 until the date Mr. Price was terminated, May 14, 2015, Mr. Price was repeatedly told by Polumbo and Eric Moore that Bryan Smith and Paul Russo wanted to get rid of him.

24.     The meetings for the "Performance Improvement Plan," rarely, if ever, took place. Instead, this period of time was used to single Mr. Price out for unwarranted criticism when his performance was in line with the rest of the sales team.

25.     During this period of time, Ms. Houlis had been covered by Mr. Price's Life Time employer sponsored medical insurance policy, as his domestic partner, after she was terminated, for approximately 7 months, until Mr. Price was also terminated.

26.     The commencement of the "Performance Improvement Plan" coincides with when Ms. Houlis was added to Mr. Price's insurance as his domestic partner.

27.     Immediately after Ms. Houlis gave birth to their daughter in March of 2015, Mr. Price received a letter indicating that Ms. Houlis was going to be dropped from his insurance.

28.     This letter was received the day she came home from the hospital with their newborn baby.

29.     The reason given was that additional documentation was necessary, even though she was already covered by Mr. Price's policy for approximately 7 months.

30.     During the "Performance Improvement Plan" period, the majority of the sales team was not meeting its numbers, however, only Mr. Price was singled out for this treatment.

31.     The "Performance Improvement Plan" basically branded Mr. Price because of his relationship with Ms. Houlis.

32.     While the sales team as a whole did not meet its numbers, only Mr. Price was terminated.

33.     The entire "Performance Improvement Plan" was, in actual effect, just a regular reminder that Paul Russo and Bryan Smith, who had Ms. Houlis terminated, also wanted Mr. Price fired.

34.     The "Performance Improvement Plan" further served to retaliate against Mr. Price because Ms. Houlis had reported impropriety while working in the Syosset, New York location; her allegations against Paul Russo; and for the filing of Ms. Houlis' lawsuit against Life Time after she was wrongfully terminated.

35.     The "Performance Improvement Plan" was designed to ostracize and shun Mr. Price within the Organization because of his relationship with Ms. Houlis.

36.     Mr. Price was terminated on May 14, 2015, this was just as Ms. Houlis' lawsuit with Life Time was about to settle. The timing of the adverse employment actions Mr. Price faced, coincided with the previously described events involving Ms. Houlis. Mr. Price's May 14, 2015 termination was just as Ms. Houlis' lawsuit settled, shortly after they had a baby together and three days before the one year anniversary of Ms. Houlis' termination.

37.     Mr. Price worked for Life Time for approximately 4 years; he had no problems while working there, until Ms. Houlis was wrongfully terminated for reporting impropriety, which included sexual harassment and embezzling.

38.     Mr. Price and Ms. Houlis are in an interracial relationship. Mr. Price is half African American and half Filipino. Ms. Houlis is a White Jewish American. Mr. Price was the only half Black, half Filipino member of the Life Time sales team and he was the only member of the sales team that was singled out with a "Performance Improvement Plan" where he was regularly reminded that Paul Russo and Bryan Smith wanted to get rid of him.

39.     To further retaliate against Mr. Price, Life Time opposed and appealed Mr. Price's application for Unemployment Insurance benefits. However, at the last minute, dismissed the appeal. Mr. Price learned this on the day he was scheduled for his appeal interview. The appeal of Mr. Price's application for Unemployment was an extension of the mistreatment and retaliation he

endured because of his relationship with Ms. Houlis. This was post termination adverse employment action designed to further injure and retaliate against Mr. Price even after he was terminated. Mr. Price was terminated while he was off from work for 16 days because Ms. Houlis just gave birth to his daughter. This left Mr. Price the unemployed father of a new born baby.

## FIRST COUNT

### (Retaliation Title VII)

40.     Mr. Price, incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 39 as if fully set forth herein.

41.     Rani Houlis, Mr. Price's significant other, complained of several instances of impropriety on the part of other Life Time managers, which, ultimately resulted in her termination. This included her reports and complaints regarding Paul Russo sexually harassing Melissa DeRogatis. After Ms. Houlis was terminated, Life Time retaliated against Mr. Price.

42.     Mr. Price was then denied a position he had been interviewing for.

43.     The interview process was conducted by Bryan Smith, who had wrongfully terminated Ms. Houlis' employment with Life Time.

44.     Mr. Price requested that the interview process be conducted by another Life Time manager because of Smith's firing of Ms. Houlis. Smith was aware Ms. Houlis is Mr. Price's significant other.

45.     Mr. Price made this request to Mark Savage in Human Resources.

46.     Then, approximately 6 to 7 months after Ms. Houlis was terminated, Mr. Price was placed on a "Performance Improvement Plan."

47.     The purpose of the "Performance Improvement Plan" was to single Mr. Price out for excessive criticism, even though his performance was in line with the rest of the sales team.

48.     Mr. Price was repeatedly reminded that both Smith and Russo wanted to get rid of him.

49.     During the course of the "Performance Improvement Plan," Mr. Price was repeatedly reminded by Mark Polombo and Eric Moore that Smith and Russo wanted to get rid of him.

50.     Mr. Price was singled out for this mistreatment because of his relationship with Ms. Houlis and because of her complaints and reports of impropriety by Life Time managers and employees.

51.     The "Performance Improvement Plan" was designed to ostracize and shun Mr. Price within the Organization because of his relationship with Ms. Houlis. This mistreatment of Mr. Price, which was an extension of the mistreatment of Ms. Houlis, was intended to dissuade the reporting of and/or supporting of a complaint related to misconduct prohibited by Title VII of the Civil Rights Act.

52.     Prior to the events involving Ms. Houlis, Mr. Price did not have any problems with any other employees or managers at Life Time.

53.     Singling Mr. Price out for excessive criticism and to otherwise make him feel like management wanted to get rid of him under the guise of a "Performance Improvement Plan" violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.      Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.      Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.      Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.      Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.      Attorney fees and Costs of Suit; and

F.      Such other relief as this Court deems Equitable and Just.

## SECOND COUNT

### (Hostile Work Environment Title VII)

54.    Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 53 as if fully set forth herein.

55.    The "Performance Improvement Plan" which was created only for Mr. Price created a hostile work environment.

56.    The "Performance Improvement Plan" which was carried out by Polombo and Moore actually served only one real purpose. To remind Mr. Price that Smith and Russo wanted to get rid of him.

57.    Mr. Price was placed on a "Performance Improvement Plan" because of his relationship with Ms. Houlis. He was also denied a position because of this relationship.

58.    The "Performance Improvement Plan" caused Mr. Price undue stress and designated him as a salesperson that did not perform at the level of the rest of the sales team, even though Mr. Price's performance was in line with the rest of the sales team.

59.   The "Performance Improvement Plan" branded Mr. Price as inferior to the rest of the sales team in order to make his work uncomfortable and subject him to be perceived negatively by the rest of the sales team and his Life Time colleagues.

60.   No other member of the sales team was placed on a "Performance Improvement Plan."

61.   It was well known at Life Time that Mr. Price was in a relationship with Ms. Houlis. The "Performance Improvement Plan" was set up to cause him to be ostracized and viewed in the work place as inferior to the rest of the sales team.

62.   The "Performance Improvement Plan" caused Mr. Price to be shunned in the workplace.

63.   The "Performance Improvement Plan" caused Mr. Price to be constantly reminded that he was likely to be terminated from his employment with Life Time.

64.   The "Performance Improvement Plan" also put the rest of the staff on notice of the likelihood that Mr. Price was going to be terminated.

65.   Mr. Price had to go to work every day with the rest of the sales team viewing him as inferior.

66.   The "Performance Improvement Plan" meetings true purpose was to make Mr. Price feel bad and to make Mr. Price know that he was likely to be fired.

67.   The creation of a "Performance Improvement Plan" for Mr. Price, because of his relationship with Ms. Houlis, sent a clear message to the staff, that conscientious objectors and those close to them would be punished.

68.     Almost exactly one year to the day after Ms. Houlis was terminated, after having to endure the hostile "Performance Improvement Plan" mistreatment, Mr. Price was also terminated.

69.     The adverse employment action Mr. Price underwent for the year after Ms. Houlis was terminated extended the retaliation against him, because of his relationship with her, for almost a full year after she was terminated.  Mr. Price endured this mistreatment as a form of extended post termination retaliation against Ms. Houlis. This altered Mr. Price's employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.     Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.     Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.     Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.     Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.     Attorney fees and Costs of Suit; and

F.     Such other relief as this Court deems equitable and just.

### THIRD COUNT

### (Disparate Treatment and Disparate Impact)

70.   Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 69 as if fully set forth herein.

71.   Mr. Price was the only half African American half Filipino American mixed race member of the Life Time sales team.

72.   It was also well known that Mr. Price was in a biracial relationship with Ms. Houlis and that they were having and later had a baby together while the events set forth in this Complaint were transpiring.

73.   As the only half African American half Filipino American member of the sales team, Mr. Price was the only member of the sales team that was singled out for mistreatment through a "Performance Improvement Plan."

74.   As the only half African American half Filipino American member of the sales team, Mr. Price was the only member of the sales team that was branded as essentially a 'dead man walking' in the work place via "Performance Improvement Plan."

75.   The "Performance Improvement Plan" solely impacted Mr. Price.

76.   No other member of the sales team was mistreated and ostracized via "Performance Improvement Plan."

77.   Ultimately, Mr. Price was terminated.  He was the only employee terminated after being singled out to be shunned and ostracized after being branded as inferior by being placed on a "Performance Improvement Plan."

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.    Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.    Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.    Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.    Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.    Attorney fees and Costs of Suit; and

F.    Such other relief as this Court deems equitable and just.

## FOURTH COUNT

### (New Jersey Law Against Discrimination Retaliation)

78.    Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 77 as if fully set forth herein.

79.    Mr. Price was mistreated in the workplace because Ms. Houlis, his significant other had reported impropriety including sexual harassment in the work place.

80.    The "Performance Improvement Plan" was created to retaliate against and harass Mr. Price for his relationship with Ms. Houlis.

81.    As part of the retaliation and hostile treatment Mr. Price was caused to endure, he was denied a position and, ultimately, was terminated because of his relationship with Ms. Houlis.

82.    The hostile retaliatory treatment of Mr. Price began around the time Ms. Houlis was terminated.

83.   The hostile retaliatory mistreatment of Mr. Price extended to even after he was terminated by Life Time.

84.   Mr. Price was retaliated against and mistreated because of his relationship with Ms. Houlis. The retaliation was caused by her reports of impropriety at Life Time that included the sexual harassment of Ms. DeRogatis by Russo. The especially egregious retaliation Mr. Price was subject to violates the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 to 42.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.   Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.   Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.   Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.   Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.   Attorney fees and Costs of Suit; and

F.   Such other relief as this Court deems equitable and just.

## FIFTH COUNT

### (Family Relationship Discrimination)

85.   Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 84 as if fully set forth herein.

86.   Mr. Price was discriminated against by Life Time and its managers because of his relationship with Ms. Houlis.

87.   Ms. Houlis was covered by Mr. Price's Life Time sponsored medical insurance plan. She was covered as a "domestic partner."

88.   It was known among Life Time staff and management that Mr. Price and Ms. Houlis lived together.

89.   It was known among Life Time staff and management that Mr. Price and Ms. Houlis were about to have a baby together.

90.   Mr. Price was singled out for a year of mistreatment by way of "Performance Improvement Plan" because of his relationship with Ms. Houlis.

91.   He was denied a position within Life Time that he was interviewing for with Bryan Smith, who had fired Ms. Houlis.

92.   Mr. Price was ultimately fired by Life Time because of his relationship with Ms. Houlis.

93.   Even after being terminated, the mistreatment of Mr. Price continued even after he was terminated, through Life Time's opposition and appeal of Mr. Price's application for Unemployment Insurance benefits.

94.   The very day Ms. Houlis returned home from the hospital after giving birth to Mr. Price's daughter, he received a letter indicating that Ms. Houlis was going to be dropped from his medical insurance.

95.   Mr. Price was terminated almost exactly one year from the date Ms. Houlis was terminated. He was terminated during his paternity leave, shortly after his daughter was born. His termination left him an unemployed father of a new born baby.

96.    The mistreatment of Mr. Price, which covers more than a year of egregious, wrongful conduct violates the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 to 42.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.    Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.    Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.    Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.    Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.    Attorney fees and Costs of Suit; and

F.    Such other relief as this Court deems equitable and just.

### SIXTH COUNT

### (New Jersey Law Against Discrimination)

97.    Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 96 as if fully set forth herein.

98.    Mr. Price was the only half African American half Filipino American mixed race member of the Life Time sales team.

99.    It was also well known that Mr. Price was in a biracial relationship with Ms. Houlis and that they were having and later had a baby together while the events set forth in this Complaint were transpiring.

100.   As the only half African American half Filipino American member of the sales team, Mr. Price was the only member of the sales team that was singled out for mistreatment through a "Performance Improvement Plan."

101.   As the only half African American half Filipino American member of the sales team, Mr. Price was the only member of the sales team that was branded as essentially a 'dead man walking' in the work place via "Performance Improvement Plan."

102.   The "Performance Improvement Plan" solely impacted Mr. Price.

103.   No other member of the sales team was mistreated and ostracized via "Performance Improvement Plan."

104.   Ultimately, Mr. Price was terminated.  He was the only employee terminated after being singled out to be shunned and ostracized after being branded as inferior by being placed on a "Performance Improvement Plan." This especially egregious discriminatory mistreatment branded Mr. Price, the only half African American half Filipino American member of the sales team, as inferior in the workplace, in violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 to 42.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.   Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.   Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.   Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.   Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding

Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.  Attorney fees and Costs of Suit; and

F.  Such other relief as this Court deems equitable and just.

## SEVENTH COUNT

### (Conscientious Employee Protection Act Whistleblower Protection)

105.  Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 104 as if fully set forth herein.

106.  Mr. Price was mistreated and faced a year of on the job retaliation because of his relationship with Ms. Houlis, who had reported and complained of impropriety, including fraud, theft and sexual harassment at Life Time. His significant other, Ms. Houlis, would not doctor time sheets to fraudulently entitle an employee to insurance benefits.

107.  Mr. Price was singled out for a "Performance Improvement Plan" which branded him essentially a 'dead man walking' who was inferior to the rest of the sales team while constantly reminding him that Russo and Smith wanted to get rid of him because of his relationship with Houlis.

108.  Ultimately, Mr. Price was wrongfully terminated because his significant other engaged in CEPA protected conduct. To further penalize him for this, Life Time appealed and attempted to deny him Unemployment Insurance benefits, but then dropped its appeal just as the matter was to be heard. This served to extend the adverse employment action taken against Mr. Price long after he was terminated to cause him harm during the time his baby with Ms. Houlis was about to be born.

109.    The egregious mistreatment and retaliation Mr. Price endured is in violation of the Conscientious Employee Protection Act, N.J.S.A. § 39:19-1 et. seq.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.    Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.    Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.    Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.    Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.    Attorney Fees and Costs of Suit; and

F.    Such other relief as this Court deems equitable and just.

## EIGHT COUNT

### (Family Leave Act)

110.    Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 109 as if fully set forth herein.

111.    Mr. Price was off from work for 16 days at the time he was terminated by Life Time. He had been off from work for 16 days because Ms. Houlis had just given birth to his daughter.

112.    Mr. Price was terminated while on leave because of the birth of his daughter. This left him the unemployed father of a new born baby. This termination was in violation of the Family

Medical Leave Act, the New Jersey Family Leave Act, 29 U.S.C. § 2601 et. seq. and/or N.J.S.A. §

34:11B-1 et. seq.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.   Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.   Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.   Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.   Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.   Attorney Fees and Costs of Suit; and

F.   Such other relief as this Court deems equitable and just.

<u>NINTH COUNT</u>

**(Violation of Public Policy)**

113.   Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 112 as if fully set forth herein.

114.   The mistreatment of Mr. Price as set forth herein is in clear violation of public policy.

115.   Mr. Price was subject to egregious mistreatment in the workplace for just a few days short of a full year. The egregious mistreatment continued even after his termination.

116.    Mr. Price was terminated as a matter of punishment and revenge, which was clearly wrongful in nature.

117.    In addition to the aforecited causes of actions set forth in the previous Counts of this Complaint, the egregious mistreatment, discrimination, abuse and retaliation Mr. Price was subject to.is in clear in violation of the public policy of the State of New Jersey.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.     Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.     Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.     Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D     .Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.     Attorney Fees and Costs of Suit; and

F.     Such other relief as this Court deems equitable and just.

### TENTH COUNT

### (Intentional Infliction of Emotional Distress)

118.    Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 117 as if fully set forth herein.

119.   The mistreatment, discrimination, abuse and retaliation that Mr. Price was subject to was intentional, extreme, outrageous and aimed at causing him intentional harm and personal distress.

120.   Life Time did not take any steps to limit the mistreatment of Mr. Price. Nor did Life Time take any remedial measures to minimize injury to Mr. Price.

121.   Mr. Price was denied a position he was interviewing for with Bryan Smith, who had fired Ms. Houlis, his significant other. Mr. Price was then placed on the "Performance Improvement Plan" which singled him out and branded him as inferior, even though his performance was in line with the rest of the sales team.

122.   Ultimately, he was fired. Though, he was not fired immediately. Instead, he was first turned down for another job within the organization, by Bryan Smith, who had fired Ms. Houlis. Then, the "Performance Improvement Plan" was created to remind him that Bryan Smith and Paul Russo wanted to get rid of him. Then, just when Ms. Houlis gave birth to his daughter, Life Time informed Mr. Price, she was going to be dropped from his medical insurance. Then, when he took time off because of the birth of his daughter, he was terminated 16 days into his leave. The timing of these events indicates an intentional design to cause him personal distress. Even after he was terminated, Life Time then objected to and appealed his application for Unemployment Insurance. This maximized the personal distress and extended the adverse employment actions taken against Mr. Price long into the months after he was terminated. And left him the unemployed father of a new born baby.

123.   The aforedescribed facts and circumstances set forth a long running, ongoing, intentional and egregious course of conduct and pattern of activity, which, by design, was intended to cause Mr. Price emotional distress.

## DEMAND FOR TRIAL BY JURY

The Plaintiff, Michael Price, II, hereby demands that this action be tried by a Jury as to all issues.

BentsenLaw
Attorney for Plaintiff
Michael Price, II

Dated: 8-10-2016

Alexander O. Bentsen, Esq.

## DESIGNATION OF TRIAL COUNSEL

Please Take Notice Alexander O. Bentsen, Esq. is hereby designated as trial counsel for the Plaintiff in this action.

BentsenLaw
Attorney for Plaintiff
Michael Price, II

Dated: 8-10-2016

Alexander O. Bentsen, Esq.

## Rule 4:5-1 Certification

Pursuant to Rule 4:5-1, the undersigned counsel certifies that the matters in controversy are not the subject of any other action pending in any Court or forum including arbitration, nor is any such court or arbitration action contemplated.

BentsenLaw
Attorney to Plaintiff
Michael Price, II

Dated: 8-10-2016

Alexander O. Bentsen, Esq.

Alexander O. Bentsen, Esq.
135 Merrymnount Street
Staten Island, New York 10314
T. 917-400-4686
F. 888-443-4096
    Attorney for Plaintiff Michael Price

------------------------------------------------------------

| | |
|---|---|
| **MICHAEL PRICE, II,** | SUPERIOR COURT OF THE STATE OF NEW JERSEY: LAW DIVISION ESSEX COUNTY |
| Plaintiff, | |
| v. | DOCKET NO.: ESX-L-5564-16 |
| | Civil Action |
| **LIFE TIME FITNESS, INC** AND **BRYAN SMITH, PAUL RUSSO, MARK POLOMBO** AND **ERIC MOORE** JOINTLY AND SEVERALLY | |
| Defendants. | **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

------------------------------------------------------------

Plaintiff, Michael Price, II, residing at 91 Clarken Drive, West Orange, New Jersey 07052, says

by way of this Complaint against Defendants Life Time Fitness, Inc. and Bryan Smith, Paul Russo,

Mark Polombo and Eric Moore, alleges as follows:

### FACTS COMMON TO ALL COUNTS

1.    Michael Price, II, is a former employee of Life Time Fitness, Inc.  Mr. Price was

employed by Life Time Fitness, Inc. and worked in the Berkley Heights and Florham Park, New

Jersey locations from November of 2011 until he was wrongfully terminated on May 14, 2015.

2.    Life Time Fitness, Inc. ("Life Time") Life Time operates fitness, recreation and spa

centers throughout the country. Life Time was a publicly traded company, however, in June of

2015, it was taken private after it was acquired by private equity firms TPG Capital and Leonard

Green Partners, L.P.  Life Time operates approximately 119 fitness centers nationally.

3.      Mr. Price was employed by Life Time as a Member Engagement Advisor. In this position, Mr. Price was a salesperson, selling new gym memberships while also maintaining relationships with existing fitness center clients

4.      Mr. Price's domestic partner, Rani Houlis, also worked for Life Time, in the Berkeley Heights and Montvale, New Jersey locations and the Syosset, New York Location, as a Spa Manager from 2012 until she was wrongfully terminated on May 17, 2014. Mr. Price was terminated on May 14, 2015, only three days prior to the one year anniversary of Ms. Houlis' termination.

5.      Ms. Houlis had sued Life Time pursuant to the Conscientious Employee Protection Act ("CEPA") and the New Jersey Law Against Discrimination ("NJLAD"). Docket No.:ESX-L-005159-14 (removed to Federal Court Docket No.: 14-cv-5425-KM-MCA). The lawsuit included Ms. Houlis' complaints about sexual harassment in the workplace.

6.      When Ms. Houlis worked in the Syosset location, she had reported impropriety, which resulted in the termination of a Life Time employee. However, after Ms. Houlis had left the Syosset location, the employee was rehired. Thereafter, Ms. Houlis was terminated by Area Director Bryan Smith. Upon information and belief another Life Time employee, Kim Berry, was also terminated for the firing of this employee. Upon information and belief, this was because the employee was a friend of Smith.

7.      Prior to when Ms. Houlis was terminated by Bryan Smith, Paul Russo was Senior General Manager of the Berkley Heights, New Jersey location where Ms. Houlis and Mr. Price worked as well as the Florham Park, New Jersey location where Mr. Price worked.

8.      Upon information and belief, Russo maintained romantic relationships with several Life Time employees, including Melissa DeRogatis. Russo was Ms. DeRogatis' direct supervisor

and their relationship was a violation of the company policy which "prohibits sexual or romantic relationships between team members who occupy positions with a direct reporting relationship" and also prohibits "a romantic relationship with a team member who is employed in the same club."

9.     Ms. Houlis confronted Russo because his behavior was interfering with Ms. DeRogatis' work. When she confronted him, Ms. Houlis called Russo's behavior sexual harassment. She had confronted Russo several times regarding this harassment and asked him to leave Ms. DeRogatis alone.

10.     Russo later falsely accused Ms. Houlis of speaking negatively about the Life Time Berkeley Heights location and also indicated to Smith that he did not want her working there.  Russo sent several emails to Smith stating that he wanted Rani "out" of the Berkeley Heights facility on September 16, 2013.

11.     These emails also falsely accused Ms. Houlis of sending vulgar text messages to National Operations Manager Ali Yanez and warned Smith that Ms. Houlis and Ms. Yanez had a relationship (as friends) outside of the workplace.

12.     Ms. DeRogatis ultimately stopped working for Life Time because Russo had asked her to lie about his relationship with her if Life Time human resources asked her about it.

13.     These types of workplace romantic relationships were common at and tolerated by Life Time.

14.     Because Ms. Houlis was terminated as a result of her attempts to address these issues, she brought an employment based lawsuit against Life Time.

15.     It was well known among the Life Time employees and managers that Mr. Price and Ms. Houlis were in a relationship.

16.     It was also well known that Mr. Price and Ms. Houlis were expecting a child together and that the baby was due in March 2015.

17.     Because of Mr. Price's relationship with Ms. Houlis, he was denied a position he was interviewing for in the Mount Laurel, New Jersey Life Time location.

18.     Mr. Price was interviewing for this position with Bryan Smith and Regional Sales Manager, Eric Moore.

19.     Out of fear and concern for similar reprisals, Mr. Price contacted Mark Savage in human resources requesting that he not be interviewed by Smith because of the events leading up to Ms. Houlis' termination.  Smith remained involved in the interview process and Mr. Price did not get the job.

20.     Thereafter around the time Ms. Houlis filed her lawsuit against Life Time, Mr. Price was placed on a "Performance Improvement Plan."

21.     The "Performance Improvement Plan" was purportedly due to poor sales performance, however, the majority of sales team that Mr. Price worked with was performing similarly. Yet, Mr. Price was the only member of the sales team singled out for this treatment.

22.     The "Performance Improvement Plan" was supposed to involve weekly meetings with Paul Russo and another Life Time manager Mark Polombo.

23.     During the "Performance Improvement Plan" period which ran from January 2015 until the date Mr. Price was terminated, May 14, 2015, Mr. Price was repeatedly told by Polombo and Eric Moore that Bryan Smith and Paul Russo wanted to get rid of him.

24.     The meetings for the "Performance Improvement Plan," rarely, if ever, took place. Instead, this period of time was used to single Mr. Price out for unwarranted criticism when his performance was in line with the rest of the sales team.

25.     During this period of time, Ms. Houlis had been covered by Mr. Price's Life Time employer sponsored medical insurance policy, as his domestic partner, after she was terminated, for approximately 7 months, until Mr. Price was also terminated.

26.     The commencement of the "Performance Improvement Plan" coincides with when Ms. Houlis was added to Mr. Price's insurance as his domestic partner.

27.     Immediately after Ms. Houlis gave birth to their daughter in March of 2015, Mr. Price received a letter indicating that Ms. Houlis was going to be dropped from his insurance.

28.     This letter was received the day she came home from the hospital with their newborn baby.

29.     The reason given was that additional documentation was necessary, even though she was already covered by Mr. Price's policy for approximately 7 months.

30.     During the "Performance Improvement Plan" period, the majority of the sales team was not meeting its numbers, however, only Mr. Price was singled out for this treatment.

31.     The "Performance Improvement Plan" basically branded Mr. Price because of his relationship with Ms. Houlis.

32.     While the sales team as a whole did not meet its numbers, only Mr. Price was terminated.

33.     The entire "Performance Improvement Plan" was, in actual effect, just a regular reminder that Paul Russo and Bryan Smith, who had Ms. Houlis terminated, also wanted Mr. Price fired.

34.     The "Performance Improvement Plan" further served to retaliate against Mr. Price because Ms. Houlis had reported impropriety while working in the Syosset, New York location;

her allegations against Paul Russo; and for the filing of Ms. Houlis' lawsuit against Life Time after she was wrongfully terminated.

35.    The "Performance Improvement Plan" was designed to ostracize and shun Mr. Price within the Organization because of his relationship with Ms. Houlis.

36.    Mr. Price was terminated on May 14, 2015, this was just as Ms. Houlis' lawsuit with Life Time was about to settle. The timing of the adverse employment actions Mr. Price faced, coincided with the previously described events involving Ms. Houlis.  Mr. Price's May 14, 2015 termination was both just as Ms. Houlis' lawsuit settled, shortly after they had a baby together and three days before the one year anniversary of Ms. Houlis' termination.

37.    Mr. Price worked for Life Time for approximately 4 years, he had no problems while working there, until Ms. Houlis was wrongfully terminated for reporting impropriety, which included sexual harassment and embezzling.

38.    Mr. Price and Ms. Houlis are in an interracial relationship.  Mr. Price is half African American and half Filipino. Ms. Houlis is a White Jewish American.  Mr. Price was the only half Black, half Filipino member of the Life Time sales team and he was the only member of the sales team that was singled out with a "Performance Improvement Plan" where he was regularly reminded that Paul Russo and Bryan Smith wanted to get rid of him.

39.    To further retaliate against Mr. Price and Ms. Houlis, Life Time opposed and appealed Mr. Price's application for Unemployment Insurance benefits. However, at the last minute, dismissed the appeal. Mr. Price learned this on the day he was scheduled for his appeal interview. The appeal of Mr. Price's application for Unemployment was an extension of the mistreatment and retaliation he endured because of his relationship with Ms. Houlis. This was post termination adverse employment action designed to further injure and retaliate against Mr. Price

even after he was terminated. Mr. Price was terminated shortly after Ms. Houlis gave birth to his daughter. This left Mr. Price the unemployed father of a new born baby.

## FIRST COUNT

### (Retaliation Title VII)

40.    Mr. Price, incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 39 as if fully set forth herein.

41.    Rani Houlis, Mr. Price's significant other, complained of several instances of impropriety on the part of other Life Time managers, which, ultimately resulted in her termination. This included her reports and complaints regarding Paul Russo sexually harassing Melissa DeRogatis. After Ms. Houlis was terminated, Life Time retaliated against Mr. Price.

42.    Mr. Price was then denied a position he had been interviewing for.

43.    The interview process was conducted by Bryan Smith, who had wrongfully terminated Ms. Houlis' employment with Life Time.

44.    Mr. Price requested that the interview process be conducted by another Life Time manager because of Smith's firing of Ms. Houlis. Smith was aware Ms. Houlis is Mr. Price's significant other.

45.    Mr. Price made this request to Mark Savage in Human Resources.

46.    Then, after Ms. Houlis was terminated, Mr. Price was placed on a "Performance Improvement Plan."

47.    The purpose of the "Performance Improvement Plan" was to single Mr. Price out for excessive criticism, even though his performance was in line with the rest of the sales team.

48.    Mr. Price was repeatedly reminded that both Smith and Russo wanted to get rid of him.

49. During the course of the "Performance Improvement Plan," Mr. Price was repeatedly reminded by Mark Polombo and Eric Moore that Smith and Russo wanted to get rid of him.

50. Mr. Price was singled out for this mistreatment because of his relationship with Ms. Houlis and because of her complaints and reports of impropriety by Life Time managers and employees.

51. The "Performance Improvement Plan" was designed to ostracize and shun Mr. Price within the Organization because of his relationship with Ms. Houlis. This mistreatment of Mr. Price, which was an extension of the mistreatment of Ms. Houlis, was intended to dissuade the reporting of and/or supporting of a complaint related to misconduct prohibited by Title VII of the Civil Rights Act.

52. Prior to the events involving Ms. Houlis, Mr. Price did not have any problems with any other employees or managers at Life Time.

53. Singling Mr. Price out for excessive criticism and to otherwise make him feel like management wanted to get rid of him under the guise of a "Performance Improvement Plan" violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A. Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B. Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C. Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.   Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.   Attorney fees and Costs of Suit; and

F.   Such other relief as this Court deems Equitable and Just.

## SECOND COUNT

### (Hostile Work Environment Title VII)

54.   Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 53 as if fully set forth herein.

55.   The "Performance Improvement Plan" which was created only for Mr. Price created a hostile work environment.

56.   The "Performance Improvement Plan" which was carried out by Polombo and Moore actually served only one real purpose. To remind Mr. Price that Smith and Russo wanted to get rid of him.

57.   Mr. Price was placed on a "Performance Improvement Plan" because of his relationship with Ms. Houlis. He was also denied a position because of this relationship.

58.   The "Performance Improvement Plan" caused Mr. Price undue stress and designated him as a salesperson that did not perform at the level of the rest of the sales team, even though Mr. Price's performance was in line with the rest of the sales team.

59.   The "Performance Improvement Plan" branded Mr. Price as inferior to the rest of the sales team in order to make his work uncomfortable and subject him to be perceived negatively by the rest of the sales team and his Life Time colleagues.

60.     No other member of the sales team was placed on a "Performance Improvement Plan."

61.     It was well known at Life Time that Mr. Price was in a relationship with Ms. Houlis. The "Performance Improvement Plan" was set up to cause him to be ostracized and viewed in the work place as inferior to the rest of the sales team.

62.     The "Performance Improvement Plan" caused Mr. Price to be shunned in the workplace.

63.     The "Performance Improvement Plan" caused Mr. Price to be constantly reminded that he was likely to be terminated from his employment with Life Time.

64.     The "Performance Improvement Plan" also put the rest of the staff on notice of the likelihood that Mr. Price was going to be terminated.

65.     Mr. Price had to go to work every day with the rest of the sales team viewing him as inferior.

66.     The "Performance Improvement Plan" meetings true purpose was to make Mr. Price feel bad, to make Mr. Price know that he was likely to be fired.

67.     The creation of a "Performance Improvement Plan" for Mr. Price, because of his relationship with Ms. Houlis, sent a clear message to the staff, that conscientious objectors and those close to them would be punished.

68.     Almost exactly one year to the day after Ms. Houlis was terminated, after having to endure the hostile "Performance Improvement Plan" mistreatment, Mr. Price was also terminated.

69.     The adverse employment action Mr. Price underwent for the year after Ms. Houlis was terminated extended the retaliation against her for almost a full year after she was

terminated. Mr. Price endured this mistreatment as a form of extended post termination retaliation against Ms. Houlis. This altered Mr. Price's employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.   Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.   Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.   Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.   Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.   Attorney fees and Costs of Suit; and

F.   Such other relief as this Court deems equitable and just.

### THIRD COUNT

### (Disparate Treatment and Disparate Impact)

70.   Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 69 as if fully set forth herein.

71.   Mr. Price was the only half African American half Filipino American mixed race member of the Life Time sales team.

72.     It was also well known that Mr. Price was in a biracial relationship with Ms. Houlis and that they were having and later had a baby together while the events set forth in this Complaint were transpiring.

73.     As the only half African American half Filipino American member of the sales team, Mr. Price was the only member of the sales team that was singled out for mistreatment through a "Performance Improvement Plan."

74.     As the only half African American half Filipino American member of the sales team, Mr. Price was the only member of the sales team that was branded as essentially a 'dead man walking' in the work place via "Performance Improvement Plan."

75.     The "Performance Improvement Plan" solely impacted Mr. Price.

76.     No other member of the sales team was mistreated and ostracized via "Performance Improvement Plan."

77.     Ultimately, Mr. Price was terminated.  He was the only employee terminated after being singled out to be shunned and ostracized after being branded as inferior by being placed on a "Performance Improvement Plan."

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.     Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.     Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.     Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.     Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding

Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.     Attorney fees and Costs of Suit; and

F.     Such other relief as this Court deems equitable and just.

### FOURTH COUNT

### (New Jersey Law Against Discrimination Retaliation)

78.     Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 77 as if fully set forth herein.

79.     Mr. Price was mistreated in the workplace because Ms. Houlis, his significant other had reported impropriety including sexual harassment in the work place.

80.     The "Performance Improvement Plan" was created to retaliate against and harass Mr. Price for his relationship with Ms. Houlis.

81.     As part of the retaliation and hostile treatment Mr. Price was caused to endure, he was denied a position and, ultimately, was terminated because of his relationship with Ms. Houlis.

82.     The hostile retaliatory treatment of Mr. Price began around the time Ms. Houlis was terminated.

83.     The hostile retaliatory mistreatment of Mr. Price extended to even after he was terminated by Life Time.

84.     Mr. Price was retaliated against and mistreated because of his relationship with Ms. Houlis. The retaliation was caused by her reports of impropriety at Life Time that included the sexual harassment of Ms. DeRogatis by Russo. The especially egregious retaliation Mr. Price was subject to violates the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 to 42.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.  Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.  Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.  Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.  Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.  Attorney fees and Costs of Suit; and

F.  Such other relief as this Court deems equitable and just.

## FIFTH COUNT

### (Family Relationship Discrimination)

85.  Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 84 as if fully set forth herein.

86.  Mr. Price was discriminated against by Life Time and its managers because of his relationship with Ms. Houlis.

87.  Ms. Houlis was covered by Mr. Price's Life Time sponsored medical insurance plan. She was covered as a "domestic partner."

88.  It was known among Life Time staff and management that Mr. Price and Ms. Houlis lived together.

89.     It was known among Life Time staff and management that Mr. Price and Ms. Houlis were about to have a baby together.

90.     Mr. Price was singled out for over a year of mistreatment which included the "Performance Improvement Plan" because of his relationship with Ms. Houlis.

91.     He was denied a position within Life Time that he was interviewing for with Bryan Smith, who had fired Ms. Houlis.

92.     Mr. Price was ultimately fired by Life Time because of his relationship with Ms. Houlis.

93.     Even after being terminated, the mistreatment of Mr. Price continued even after he was terminated, through Life Time's opposition and appeal of Mr. Price's application for Unemployment Insurance benefits.

94.     The very day Ms. Houlis returned home from the hospital after giving birth to Mr. Price's daughter, he received a letter indicating that Ms. Houlis was going to be dropped from his medical insurance.

95.     Mr. Price was terminated almost exactly one year from the date Ms. Houlis was terminated. He was terminated shortly after his daughter was born. His termination left him an unemployed father of a new born baby.

96.     The mistreatment of Mr. Price, which covers more than a year of egregious, wrongful conduct violates the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 to 42.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

      A.      Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.  Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.  Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.  Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.  Attorney fees and Costs of Suit; and

F.  Such other relief as this Court deems equitable and just.

## SIXTH COUNT

### (New Jersey Law Against Discrimination)

97.  Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 96 as if fully set forth herein.

98.  Mr. Price was the only half African American half Filipino American mixed race member of the Life Time sales team.

99.  It was also well known that Mr. Price was in a biracial relationship with Ms. Houlis and that they were having and later had a baby together while the events set forth in this Complaint were transpiring.

100.  As the only half African American half Filipino American member of the sales team, Mr. Price was the only member of the sales team that was singled out for mistreatment through a "Performance Improvement Plan."

101.    As the only half African American half Filipino American member of the sales team, Mr. Price was the only member of the sales team that was branded as essentially a 'dead man walking' in the work place via "Performance Improvement Plan."

102.    The "Performance Improvement Plan" solely impacted Mr. Price.

103.    No other member of the sales team was mistreated and ostracized via "Performance Improvement Plan."

104.    Ultimately, Mr. Price was terminated.  He was the only employee terminated after being singled out to be shunned and ostracized after being branded as inferior by being placed on a "Performance Improvement Plan." This especially egregious discriminatory mistreatment branded Mr. Price, the only half African American half Filipino American member of the sales team, as inferior in the workplace, in violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 to 42.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.    Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.    Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.    Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.    Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.    Attorney fees and Costs of Suit; and

F.      Such other relief as this Court deems equitable and just.

## SEVENTH COUNT

## (Family Leave Act)

105.    Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 104 as if fully set forth herein.

106.    Mr. Price was off from work for 16 days shortly before he was terminated by Life Time. He had been off from work for 16 days because Ms. Houlis had just given birth to his daughter.

107.    Mr. Price was terminated because of the birth of his daughter with Ms. Houlis. This left him the unemployed father of a new born baby. This termination was in violation of the Family Medical Leave Act, the New Jersey Family Leave Act, 29 U.S.C. § 2601 et. seq. and/or N.J.S.A. § 34:11B-1 et. seq.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.      Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.      Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.      Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.      Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.      Attorney Fees and Costs of Suit; and

F.      Such other relief as this Court deems equitable and just.

## EIGHTH COUNT

### (Violation of Public Policy)

108.    Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 107 as if fully set forth herein.

109.    The mistreatment of Mr. Price as set forth herein is in clear violation of public policy.

110.    Mr. Price was subject to egregious mistreatment in the workplace for just a few days short of a full year.  The egregious mistreatment continued even after his termination.

111.    Mr. Price was terminated as a matter of punishment and revenge, which was clearly wrongful in nature.

112.    In addition to the aforecited causes of actions set forth in the previous Counts of this Complaint, the egregious mistreatment, discrimination, abuse and retaliation Mr. Price was subject to is in clear in violation of the public policy of the State of New Jersey.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.      Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.      Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.      Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D       .Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding

Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.     Attorney Fees and Costs of Suit; and

F.     Such other relief as this Court deems equitable and just.

<u>**NINTH COUNT**</u>

**(Intentional Infliction of Emotional Distress)**

113.    Mr. Price incorporates, reasserts and realleges the allegations set forth in Paragraphs 1 through 112 as if fully set forth herein.

114.    The mistreatment, discrimination, abuse and retaliation that Mr. Price was subject to was intentional, extreme, outrageous and aimed at causing him intentional harm and personal distress.

115.    Life Time did not take any steps to limit the mistreatment of Mr. Price. Nor did Life Time take any remedial measures to minimize injury to Mr. Price.

116.    Mr. Price was denied a position he was interviewing for with Bryan Smith, who had fired Ms. Houlis, his significant other. Mr. Price was then placed on the "Performance Improvement Plan" which singled him out and branded him as inferior, even though his performance was in line with the rest of the sales team.

117.    Ultimately, he was fired. Though, he was not fired immediately. Instead, he was first turned down for another job within the organization, by Bryan Smith, who had fired Ms. Houlis. Then, the "Performance Improvement Plan" was created to remind him that Bryan Smith and Paul Russo wanted to get rid of him. Then, just when Ms. Houlis gave birth to his daughter, Life Time informed Mr. Price, she was going to be dropped from his medical insurance. The timing of these events indicates an intentional design to cause him personal distress. Even after he

was terminated, Life Time then objected to and appealed his application for Unemployment Insurance. This maximized the personal distress and extended the adverse employment actions taken against Mr. Price long into the months after he was terminated.  And left him the unemployed father of a new born baby.

118.    The aforedescribed facts and circumstances set forth a long running, ongoing, intentional and egregious course of conduct and pattern of activity, which, by design, was intended to cause Mr. Price emotional distress.

**WHEREFORE,** Mr. Price demands judgment against the Defendants jointly and severally in their individual and professional capacities awarding:

A.    Damages, including lost wages and interest, caused by the Defendants' unlawful conduct;

B.    Compensatory damages, including, but not limited to, pain and suffering and other harms and losses caused by the Defendants' unlawful conduct;

C.    Punitive damages because of the extreme and outrageous nature of the Defendants' unlawful conduct;

D.    Equitable relief, including, but not limited to, injunctive relief enjoining Defendants from misrepresenting the facts and circumstances surrounding Mr. Price's performance as an employee and/or the reasons that he was terminated by Defendants;

E.    Attorney Fees and Costs of Suit; and

F.    Such other relief as this Court deems equitable and just.

STATE OF NEW JERSEY)
                     :
COUNTY OF ESSEX     )

I, Michael Price, II, being duly sworn depose and say:

I am the Plaintiff in the within action; I have read the foregoing Complaint and Demand for Jury Trial and know the contents to be true upon my own personal knowledge, except as to matters alleged upon information and belief; and as to those matters I believe them to be true.

Dated:  9/9/16

_____
Michael Price, II

## DEMAND FOR TRIAL BY JURY

The Plaintiff, Michael Price, II, hereby demands that this action be tried by a Jury as to all issues.

BentsenLaw
Attorney for Plaintiff
Michael Price, II

Dated:  SEPT. 9, 2016

_____
Alexander O. Bentsen, Esq.

## DESIGNATION OF TRIAL COUNSEL

Please Take Notice Alexander O. Bentsen, Esq. is hereby designated as trial counsel for the Plaintiff in this action.

BentsenLaw
Attorney for Plaintiff
Michael Price, II

Dated:  SEPT. 9, 2016

_____
Alexander O. Bentsen, Esq.

## Rule 4:5-1 Certification

Pursuant to Rule 4:5-1, the undersigned counsel certifies that the matters in controversy are not the subject of any other action pending in any Court or forum including arbitration, nor is any such court or arbitration action contemplated.

BentsenLaw
Attorney to Plaintiff
Michael Price, II

Dated: Sept. 9, 2016

Alexander O. Bentsen, Esq.

## CERTIFICATION OF FACSIMILE SIGNATURE PURSUANT TO RULE 1:4-4(C)

I hereby certify that Michael Price, II, has acknowledged the genuineness of his signature on the signature page submitted herewith. A copy of the original will be filed with the Court if requested by the Court or a party.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Alexander O. Bentsen, Esq.

Dated: Sept. 9, 2016

## CERTIFICATE OF SERVICE

I, Alexander O. Bentsen, Esq., hereby certify that on September 9, 2016, I emailed and mailed a

copy of the attached Amended Complaint, via email and United States Postal Service Priority Mail,

to the following:

>       Robyn Koshy, Esq.
>       Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
>       10 Madison Avenue
>       Suite 400
>       Morristown, New Jersey 07960

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.

                                                Alexander O. Bentsen, Esq.

Dated: Sept. 9, 2016

**Appendix XII-B1**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| FOR USE BY CLERK'S OFFICE ONLY | |
|---|---|
| PAYMENT TYPE: ☐CK ☐CG ☐CA | |
| CHG/CK NO. | |
| AMOUNT: | |
| OVERPAYMENT: | |
| BATCH NUMBER: | |

| | |
|---|---|
| ATTORNEY / PRO SE NAME<br>Alexander O. Bentsen, Esq. | TELEPHONE NUMBER<br>(917) 400-4686 | COUNTY OF VENUE<br>Essex |
| FIRM NAME (if applicable)<br>BentsenLaw | DOCKET NUMBER (when available)<br>L-5564-16 |
| OFFICE ADDRESS<br>135 Merrymount Street<br>Staten Island, New York 10314 | DOCUMENT TYPE<br>COMPLAINT & JURY DEMAND<br><br>JURY DEMAND  ■ Yes  ☐ No |

NAME OF PARTY (e.g., John Doe, Plaintiff)
Michael Price, II

CAPTION
Michael Price, II v. Life Time Fitness, Inc. and Bryan Smith, Paul Russo, Mark Polombo and Eric Moore

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>005, 616, 618 | HURRICANE SANDY<br>RELATED?<br>☐ YES   ■ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES  ■ NO |
| | | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

RELATED CASES PENDING?
☐ Yes   ■ No

IF YES, LIST DOCKET NUMBERS

DO YOU ANTICIPATE ADDING ANY PARTIES
(arising out of same transaction or occurrence)?
☐ Yes   ■ No

NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)
☐ NONE
■ UNKNOWN

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

DO PARTIES HAVE A CURRENT, PAST OR
RECURRENT RELATIONSHIP?
■ Yes   ☐ No

IF YES, IS THAT RELATIONSHIP:
■ EMPLOYER/EMPLOYEE   ☐ FRIEND/NEIGHBOR   ☐ OTHER (explain)
☐ FAMILIAL   ☐ BUSINESS

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ■ YES   ☐ No

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR
ACCELERATED DISPOSITION

AUG 1 0 2016

FINANCE DIVISION
RECEIVED/FILED

| | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes   ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
| | WILL AN INTERPRETER BE NEEDED?<br>☐ YES   ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be
redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:

**Side 2**



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
151   NAME CHANGE
175   FORFEITURE
302   TENANCY
399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502   BOOK ACCOUNT (debt collection matters only)
505   OTHER INSURANCE CLAIM (including declaratory judgment actions)
506   PIP COVERAGE
510   UM or UIM CLAIM (coverage issues only)
511   ACTION ON NEGOTIABLE INSTRUMENT
512   LEMON LAW
801   SUMMARY ACTION
802   OPEN PUBLIC RECORDS ACT (summary action)
999   OTHER (briefly describe nature of action)

### Track II - 300 days' discovery
305   CONSTRUCTION
509   EMPLOYMENT (other than CEPA or LAD)
599   CONTRACT/COMMERCIAL TRANSACTION
603N  AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y  AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605   PERSONAL INJURY
610   AUTO NEGLIGENCE – PROPERTY DAMAGE
621   UM or UIM CLAIM (includes bodily injury)
699   TORT – OTHER

### Track III - 450 days' discovery
005   CIVIL RIGHTS
301   CONDEMNATION
602   ASSAULT AND BATTERY
604   MEDICAL MALPRACTICE
606   PRODUCT LIABILITY
607   PROFESSIONAL MALPRACTICE
608   TOXIC TORT
609   DEFAMATION
616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617   INVERSE CONDEMNATION
618   LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303   MT. LAUREL
508   COMPLEX COMMERCIAL
513   COMPLEX CONSTRUCTION
514   INSURANCE FRAUD
620   FALSE CLAIMS ACT
701   ACTIONS IN LIEU OF PREROGATIVE WRITS

### Multicounty Litigation (Track IV)
271   ACCUTANE/ISOTRETINOIN
274   RISPERDAL/SEROQUEL/ZYPREXA
278   ZOMETA/AREDIA
279   GADOLINIUM
281   BRISTOL-MYERS SQUIBB ENVIRONMENTAL
282   FOSAMAX
285   STRYKER TRIDENT HIP IMPLANTS
286   LEVAQUIN
287   YAZ/YASMIN/OCELLA
288   PRUDENTIAL TORT LITIGATION
289   REGLAN

290   POMPTON LAKES ENVIRONMENTAL LITIGATION
291   PELVIC MESH/GYNECARE
292   PELVIC MESH/BARD
293   DEPUY ASR HIP IMPLANT LITIGATION
295   ALLODERM REGENERATIVE TISSUE MATRIX
296   STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS
297   MIRENA CONTRACEPTIVE DEVICE
299   OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR
300   TALC-BASED BODY POWDERS
601   ASBESTOS
623   PROPECIA

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

### Please check off each applicable category    ☐ Putative Class Action    ☐ Title 59

ESSEX COUNTY - CIVIL DIVISION
SUPERIOR COURT OF NJ
465 MARTIN LUTHER KING JR BLVD
NEWARK                NJ 07102

COURT TELEPHONE NO. (973)  693-5529
COURT HOURS  8:30 AM - 4:30 PM

                                                    TRACK ASSIGNMENT NOTICE

                                DATE:       AUGUST 11, 2016
                                RE:         PRICE II VS LIFE TIME FITNESS INC
                                DOCKET:     ESX L -005564 16

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:  HON GARRY J. FURNARI

       IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      002
AT:
       (973) 776-9300.

       IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.

                             ATTENTION:
                                            MICHAEL PRICE II

                                                 00000

JUGSHEO